SCHOOLER *vs.* SCHOOLER.

The facts in this case demanded the grant of an injunction, and not to have granted it would have been error.

Judgment affirmed.

February 7, 1885.

JACKSON, Chief Justice.

[Mary A. Schooler filed her bill against James B. Schooler, alleging that she was married to him in 1861; that nine children have been born to them, of whom six are now living; that she has demeaned herself dutifully, laboring continuously for the support of her family, in which, since the war, the husband has not seemed to take much interest; that, by the advice of friends, she has invested that portion of her father's estate which came to her in about two hundred acres of land in Bartow county, the title to which is in her, and on which she has a little

home and from which she derives a support for herself and her children ; that more than three years ago, her husband left her, and soon afterwards went to Tennessee; that he took with him all of the proceeeds of that year's crop; that he has returned twice since, only to get more of the hard earnings of complainant and her children; that he was in Georgia at the time of the filing of the bill, having returned a few days before, and took possession of complainant's house; that she had cows, calves, hogs, corn, oats, cotton, wheat, etc., all of which the husband had taken possession, and complainant believed he did so for the purpose of converting everything into cash and going away, as he had previously done. The prayer was that he be enjoined from interfering with her business in any way, and from selling, disposing of or carrying away any of the property ; that a divorce be granted her; also for general relief.

By amendments, the complainant alleged cruelty on the part of her husband, and while claiming title to the personal property named, prayed alimony therefrom.

The respondent answered substantially as follows: Complainant's father died in 1857 or 1858 ; all of the property to which she was entitled and which she received from her father's estate as his heir at law was claimed by respondent and reduced by him to possession ; the amount received was $1,000.00 ; respondent bought the interest of P. L. Mynatt, complainant's brother, and from this source received $1,000.00 ; complainant's mother received $1,000.00 from the same source ; with part of this $3,000.00, two lots of land in Bartow county were bought in 1872 ; respondent negotiated the trade for the land, but reposing great confidence in Mynatt, entrusted the making and receiving of the title-deeds to him ; Mynatt took the title to complainant and her mother, without the knowledge or consent of defendant; subsequently the land was divided between complainant and her mother, and they made the necessary relinquishments to each other; after the deed was made

to complainant and her mother, respondent, on account of the great confidence he had in Mynatt, allowed the deed to remain as it then stood, because he did not desire to enter into litigation and thought it would be a wise precaution against any misfortune in the future, as he desired to provide a home safely for himself, complainant and their children. He believed and acted on the belief that, by allowing the title to remain in complainant, after the discovery of what had been done, he was making his home and the title thereto more secure both for himself and for complainant and their children, and in this way he hoped to secure it from the effects of any unfortunate speculation that he might engage in in the future. He claimed title to the personalty, not stating the origin of his title to part of it, but as to the other part, saying it was the proceeds of the crop raised on the land. He admits that he took the proceeds of the cotton crop of the year he left for Tennessee, but denies that he took anything else at that time. Concerning his absence from home, he alleged that, in January, 1882, he went to Tennessee to obtain possession of a farm he owned, which had been confiscated, and succeeded in doing so in the following March. He then leased it and returned to Georgia in the following month. He staid with his family until June, and then returned to Tennessee. He came again to Georgia in January, 1883, and the next month returned to Tennessee, where he remained until recently, trying to manage his farm there and to sell it. This was necessary, and with the assent of complainant; and during his visits home, he lived with her as husband and wife should do. He denies loss of interest in the family or failure to do his duty to them, and says that he is fifty-four years old and not able to do hard work on the farm; also that the first declaration of any separation was in a letter from his wife dated June, 1883. He traversed generally the other statements of the bill. He admits that he is present now, as charged in the bill, and says that he may or may not convert such

things as are surplus on the farm into money, but that he has not converted anything nor has he proposed·to do so, but he claims all of the property as his own, and prays that both the realty and personalty may be so decreed.

The case was heard upon the pleadings and affidavits presented by both parties. The chancellor granted a temporary injunction, restraining the defendant from selling or carrying away any of the property. He excepted.]